David G. Hagopian, State Bar No. 145171
dhagopian@cdflitigation.com
Jeffrey Sikkema, State Bar No. 164367
jsikkema@cdflitigation.com
CAROTHERS DISANTE & FREUDENBERGER LLP
2600 Michelson Drive
Suite 800
Irvine, California 92612
Telephone: (949) 622-1661
Facsimile: (949) 622-1669

Attorneys for Defendant
ASCENT MORTGAGE RESOURCE GROUP LLC d/b/a
AMERICAN RENT TO OWN

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHELLE COULTER and RICHARD DANIELS, on Behalf of Themselves and all Others Similarly Situated,<br><br>Plaintiffs,<br>vs.<br><br>ASCENT MORTGAGE RESOURCE GROUP LLC d/b/a AMERICAN RENT TO OWN,<br><br>Defendant. | Case No. 2:16-cv-02237<br><br>Assigned for All Purposes To:<br>Judge: Stanley A. Bastian<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY**<br><br>Date: May 16, 2017<br>Time: 10:00 a.m.<br>Telephonic Argument: Clerk to provide number<br><br>Action Filed: September 20, 2016 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..... i
II. BACKGROUND ..... 3
A. Factual Background ..... 3
B. Procedural Background ..... 4
III. ARGUMENT ..... 6
A. This Case Involves Issues of Express Consent and Use of an ATDS ..... 6
1. Prior Express Consent ..... 6
2. Automatic Telephone Dialing System/ATDS ..... 8
B. Plaintiffs Lack Standing For, At Most, a Procedural Violation ..... 10
C. A Stay is Appropriate in this Case Pending *ACA International v. FCC* ..... 13
IV. CONCLUSION ..... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACA International v. FCC*, Case No. 15-1211 .......... 1, 3, 5, 10, 13, 14, 16

*Charvat v. DFS Services, LLC*, 781 F. Supp. 2d 588 (S.D. Ohio 2011) .......... 5

*Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138 (2013) .......... 10, 12

*Clinton v. Jones*, 520 U.S. 681 (1997) .......... 13

*CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962) .......... 13

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) .......... 10

*Dominguez v. Yahoo!, Inc.*, 8 F.Supp 3d 637 (E.D. Pa. 2014) .......... 9

*Gragg v. Orange Cab Co.*, 995 F.Supp.2d 1189 (W.D. Wash. 2014) .......... 9

*Griffith v. Consumer Portfolio Service, Inc.*, 838 F.Supp.2d 723 (N.D. Ill. 2011) .......... 9

*Gusman v. Comcast Corp.*, No. 13CV1049-GPC (DHB), 2014 WL 2115472, at *2 (S.D. Cal. May 21, 2014) .......... 14

*Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857 (9th Cir. 1979) .......... 13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......... 10

*Marks v. Crunch San Diego, LLC*, 55 F.Supp.3d 1288 (2014) .......... 9

*Marks v. Crunch San Diego, LLC*, Case No. 14-56834 .......... 1, 13, 14, 16

*Mbazomo v. Etourandtravel, Inc.*, 2016 WL 7165693 (E.D. Cal., December 8, 2016) .......... 12

*McElroy v. Tracy Unified Sch. Dist.*, No. 2:07-CV-00086-MCE-EFB, 2007 WL 1674000, at *1 (E.D. Cal. June 8, 2007) .......... 15

*Munoz v. PHH Corp.*, No. 08-0759, 2011 WL 4048708, at *2 (E.D. Cal. Sept. 9, 2011) .......... 13, 14

*Raines v. Byrd*, 521 U.S. 811 (1997) .......... 10

*Robins v. Spokeo*, Case No. 11-56843 .......... 2, 13, 16

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) .......... 8

*Spokeo, Inc. v. Robins*, 578 U.S. ___, 136 S. Ct. 1540 (2016) .......... 2, 6, 10, 11, 12, 13

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009) .......... 10, 11

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775 (9th Cir. 2002) .......... 14, 15

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

*Thomas v. Mundell*, 572 F.3d 756 (9th Cir. 2009) .......... 10

*Warth v. Seldin*, 422 U.S. 490 (1975) .......... 10

**Statutes**

47 C.F.R. § 64.1200(e) .......... 5

47 C.F.R. § 64.1200(f)(2) .......... 9

47 C.F.R. § 64.1200(f)(8) .......... 7

47 U.S.C. § 227 .......... 1

47 U.S.C. § 227(a)(1)(A) .......... 8

47 U.S.C. § 227(a)(1)(B) .......... 8

47 U.S.C. § 227(b)(1)(A) .......... 2, 3, 5, 6, 8

47 U.S.C. § 227(c) .......... 5

47 U.S.C. §227(b)(3)(B) .......... 4

47 U.S.C. §227(b)(3)(C) .......... 4

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 10

In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Rcd. 7961 (2015) .......... 1

## I. INTRODUCTION

This case is another one of the many cases filed in the federal courts in recent years under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Class action counsel locates a plaintiff who received a call or a text message, and they file a putative class action claiming millions of dollars in TCPA statutory penalties ($500 per statutory violation, $1,500 if "willfully or knowingly") even though the plaintiff suffered no real tangible injury. In most of these cases, the size of the claims alone threatens to put the defendant out of business.

Defendant Ascent Mortgage Resource Group LLC d/b/a American Rent to Own, ("Ascent Mortgage") is a small company that assists individuals with poor credit who are interested in owning a home. It does not make cold calls. Individuals interested in this type of assistance contact Ascent Mortgage through its website and provide their contact information for Ascent Mortgage to follow-up with them. In providing the contact information, the individuals explicitly consent to be contacted by phone by use of an autodialer or predictive dialer. So unlike many cases, this case does not involve calls or text messages to individuals who are strangers to the Defendant, or to those who have not consented to such contact.

While there are numerous problems with Plaintiff's complaint, the present motion highlights two key substantive issues under the TCPA as they relate to this case:

(1) the definition of an "automatic telephone dialing system," and

(2) the concept of "prior express consent" by Plaintiffs.

As discussed below, these two substantive issues are essential issues under the TCPA and each issue could be dispositive in this case.

Three matters currently pending before the appellate courts relate to these issues: (1) numerous petitions challenging the FCC's 2015 Omnibus Ruling[1] are pending before the D.C. Circuit, *ACA International v. FCC*, Case No. 15-1211; (2) the case of *Marks v. Crunch San Diego, LLC*, Case No. 14-56834 (which involves the definition of "automatic telephone dialing system") is

---

[1] In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Rcd. 7961 (2015) ("FCC 2015 Ruling").

on appeal to the Ninth Circuit; and (3) the Ninth Circuit is reexamining its ruling in *Robins v. Spokeo*, Case No. 11-56843, in light of the Supreme Court's remand.  The Ninth Circuit itself recently deferred ruling on *Marks* until the D.C. Circuit decides the petitions challenging the FCC 2015 Ruling.  *See* Sikkema Decl., ¶¶ 15-16 and Exhs. 6 and 7.

After the generic allegations are stripped away from this case, the specific facts show that, at most this case involves two hyper-technical issues, not under the statute per se, but under the FCC's rulings and regulations purporting to interpret the statute.

First, Plaintiffs clearly consented to be contacted by phone using an autodialer or predictive dialer. See Decl. of Christopher Robinson, ¶¶ 5-7 and Exh. 1 thereto.  However, the FCC's current interpretation of "consent" under 47 U.S.C. § 227(b)(1)(A) requires essentially an 'e-signature" to qualify as consent under that statutory provision.  The issue of "consent" is pending before the D.C. Circuit in the petitions challenging the FCC's regulations.  Moreover, even if the consent here does not satisfy the FCC's interpretation, at most, the violation is procedural, which may defeat Article III standing under the Supreme Court opinion of *Spokeo, Inc. v. Robins*, 578 U.S. ___, 136 S. Ct. 1540 (2016), the remand of which is currently pending before the Ninth Circuit.

Second, Ascent Mortgage uses telephone equipment that dials the phone numbers, i.e., the telephone numbers are not manually dialed.  The equipment, however, does not generate phone numbers, neither randomly, sequentially, or otherwise.  The actual phone numbers provided to Ascent Mortgage by individuals who provide their phone numbers through the website are inputted into the system, and when Ascent Mortgage wants to call those numbers, the system is activated to call those numbers.  At the moment, that might be sufficient to constitute an "automatic telephone dialing system," at least to the FCC.  This issue also is currently pending before the D.C. Circuit and the Ninth Circuit.

At this stage of the proceedings in this case, these two substantive TCPA issues impact this case in two ways.  <u>First</u>, even under the current FCC interpretation of "consent" under the TCPA (which may or may not remain valid), at most the Complaint alleges a procedural violation, which may not be sufficient for Article III standing.  <u>Second</u>, given the current state of the law, Ascent Mortgage submits that a stay of this case pending the resolution of these issues in the circuit courts,

particularly the *ACA International v. FCC* case, would serve the interest of judicial economy and efficiency as well as the interests of the parties.

## II. BACKGROUND

### A. Factual Background

Ascent Mortgage offers help to individuals with poor credit who are interested in buying a house. Ascent Mortgage does not make cold calls. The only calls Ascent Mortgage makes are to individuals who have contacted Ascent Mortgage through its website. If the individual wants Ascent Mortgage's help and wants a contact from Ascent Mortgage, he or she must complete the protocol on the website. That protocol includes providing the necessary contact information, including phone numbers, and express consent for Ascent Mortgage to contact them, including specifically by autodialed calls.

On the Ascent Mortgage website, included in the contact information section is a line for a telephone number. The website does not require that a cell phone number be provided. Any phone number will suffice. In fact, Ascent Mortgage does not know whether the phone number provided is a cell phone number, a residential landline number, or a business number. In order to submit this contact information, the person agrees to the following:

> By clicking "View Homes" I consent by electronic signature to be contacted about this request and related services at the telephone number provided above (dialed manually, by autodialer, and/or by text message & e-mail). This consent is required as a condition to continue.

*See* Robinson Decl., ¶ 6 and Exh. 1 thereto. Both of the named Plaintiffs here provided such consent prior to receiving any calls. *See* Robinson Decl., ¶ 7.

After a person completes the website protocol indicating interest in obtaining help in buying a home, Ascent Mortgage attempts to contact the person by telephone. These are live calls -- Ascent Mortgage does not use any "artificial or prerecorded voice" (47 U.S.C. § 227(b)(1)(A)) for these calls. *See* Robinson Decl., ¶ 8.

The numbers are not dialed manually. Ascent Mortgage does use telephone equipment that dials the numbers. The phone numbers provided to Ascent Mortgage by the individuals through the website are compiled, and the telephone system dials the numbers. When a call is picked up at

the other end, the call is sent to an Ascent Mortgage representative. So in some sense, Ascent Mortgage uses a telephone system that might be described as an "autodialer." But the phone numbers themselves are not generated by the equipment. The numbers were obtained from the individuals who inputted the numbers on the website, these numbers were collected and stored in the database in the form of lists. *See* Decl. of Geoff Mina. The equipment is then activated to call the numbers on the applicable list.

Procedures are in place if the person wants to be placed on a do-not-call list. Neither of these two Plaintiffs ever revoked their consent or authorization to be called, or asked to be placed on a do-not-call list. Robinson Decl., ¶ 10.

**B. <u>Procedural Background</u>**

Plaintiffs allege that Ascent Mortgage made calls to their cell phone numbers. The Complaint in this case alleges two basic TCPA claims against Defendant Ascent Mortgage. The first claim alleges a "willful and knowing" violation of the TCPA, seeking the statutory treble penalty of $1,500 per alleged violation under 47 U.S.C. §227(b)(3)(C). The second claim alleges the basic statutory penalty of $500 per alleged violation, pursuant to 47 U.S.C. §227(b)(3)(B).

The two counts in the Complaint generically allege TCPA violations. The substance of the TCPA claims is found elsewhere in the Complaint. With respect to the substance, the Complaint alleges 3 purported classes, as follows:

(1) persons who were called "with the use of an artificial or prerecorded voice," Complaint ¶ 26(e);

(2) persons who were called "with the use of an automatic telephone dialing system and who did not provide "prior express written consent," Complaint, ¶ 28(d) and (e); and

(3) persons who were called, notified Ascent Mortgage that they no longer wished to be called, but were still called anyway, by use of an automatic telephone dialing system, Complaint ¶ 30.

While this motion is not one brought on the merits, it is clear that Ascent Mortgage does not make calls using artificial or prerecorded voice. See Robinson Declaration, ¶ 8. Thus, proposed Class No. 1 does not appear to have any validity.

With respect to proposed Class No. 3, this case does not involve the National Do-Not-Call registry. Neither Plaintiff alleges that their cell phone numbers are on the National Do Not Call Registry. The purported class does not involve this issue, as it refers to an "internal do-not-call list," *see* Complaint, ¶¶ 30-31. But with respect to the allegation regarding an internal do-not-call list, neither of the named Plaintiffs ever requested that Defendant not call again. See Robinson Declaration, ¶ 10. Moreover, calling a number on an internal do-not-call list is not necessarily a violation of the statute, where reasonable procedures are in place. *See, e.g., Charvat v. DFS Services, LLC*, 781 F. Supp. 2d 588 (S.D. Ohio 2011). The Complaint does not allege that Ascent Mortgage lacked reasonable procedures.[2] For these reasons alone, proposed Class No. 3 appears to have no basis.

That leaves proposed Class No. 2. This proposed class requires, among other things, use of an "automatic telephone dialing system," or "ATDS," and the lack of "prior express consent." *See* 47 U.S.C. § 227(b)(1)(A). The FCC has adopted regulations on both issues, and both issues are pending in the petitions before the D.C. Circuit in *ACA International v. FCC*. *See* Declaration of Jeffrey C. Sikkema. The questions of whether these essential elements/defenses are satisfied in this case are likely to be directly impacted by the D.C. Circuit's decision.

///

///

///

---

[2] The nature of the do-not-call allegations in the Complaint is unclear. The Complaint alleges calls to cell phone numbers. The TCPA authorizes the FCC to issue do-not-call regulations for calls to residential phone numbers, not cell phone numbers. *See* 47 U.S.C. § 227(c). The FCC adopted do-not-call regulations for residential landlines, and then appears to have applied some or all of them to cell phones. *See* 47 C.F.R. § 64.1200(e). Plaintiffs do not specify which particular statutory provision or FCC regulation they rely on for this proposed class.

## III. ARGUMENT

Ascent Mortgage raises essentially two issues in this motion. First, Ascent Mortgage contends that plaintiffs' lack of standing under Article III of the Constitution in light of the Supreme Court ruling in *Spokeo v. Robins*. The Supreme Court remanded the case to the Ninth Circuit, and the court may wish to defer ruling on this issue until the Ninth Circuit rules.

Second, key issues regarding the interpretation of the TCPA are pending before the D.C. Circuit in petitions challenging the FCC's regulations. The issues of consent and the definition of ATDS are likely to be dispositive in the present case. Ascent Mortgage contends that judicial economy and efficiency would be served by staying this case until the D.C. Circuit rules on those petitions.

### A. This Case Involves Issues of Express Consent and Use of an ATDS.

This Motion in part seeks a stay of this case pending the decision of the D.C. Circuit regarding the validity of the FCC's regulations regarding consent and the definition of ATDS under the TCPA. It may be useful to provide some background on these two issues as well as their significance to this case.

#### 1. Prior Express Consent

Under the TCPA, a telemarketing call[3] made to a cell phone number does not violate the TCPA if it is made "with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A).

On its face, the consent provided by the individuals in the Ascent Mortgage website would appear to satisfy the statutory requirement. The statute simply requires that calls to cell phones using an ATDS be made "with the prior express consent" of the called party. The individuals provide that consent as part of the website protocol when providing their phone numbers. That consent expressly includes consent to be called using an autodialer or predictive dialer.

[3] At this point, it is unclear whether the calls alleged by the Plaintiffs in this case qualify as "telemarketing" calls.

Indeed, prior to October 2013, the FCC's own regulation was that if the called party simply had provided his or her cell phone number, that was sufficient to constitute "prior express consent" pursuant to this statutory section. Obviously, Ascent Mortgage's website does much more than that.

However, in October 2013, the FCC changed its rule. Beginning in October 2013, the FCC declared that simply providing a cell phone number was not enough. In fact, the FCC's new rule imposed specific language and specific procedures. Among other things, the FCC's October 2013 Order stated:

> (8) The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.
>
> (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:
>
> > (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
> >
> > (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.
>
> (ii) The term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

*See* 47 C.F.R. § 64.1200(f)(8).

The FCC's rule in effect requires a written contract of sorts supported by an e-signature. This interpretation by the FCC of the statutory language of "prior express consent" is now being challenged before the D.C. Circuit.

///

///

///

///

**2. <u>Automatic Telephone Dialing System/ATDS</u>**

With respect to the use of an ATDS, the mere fact that a computer or technology was used as part of the process of storing the phone numbers or sending text messages is not enough. An "ATDS" must have been used, pursuant to the requirement in 47 U.S.C. § 227(b)(1)(A).[4]

An ATDS is defined in the TCPA as follows:

> (a) Definitions
>
> As used in this section --
> (1) The term "automatic telephone dialing system" means equipment which has the capacity --
>
> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
> (B) to dial such numbers.

47 U.S.C. § 227(a)(1)(A) and (B). The Ninth Circuit has stated that this definition of an ATDS is "clear and unambiguous." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009).

In order to apply the statutory language to the equipment used in each case, the courts have had to delve into some aspects of the technology of the equipment used. The statutory requirement that the system must use a "random or sequential number generator" has been addressed by the courts. Several cases have held that the phrase "random or sequential number generator" means the equipment itself creates or generates the numbers. It does not mean a system that automatically dials numbers that have been provided to it by human input, even when those numbers have been stored in the system, *e.g.*, in a list or database. So when equipment dials or texts a group of numbers from a list or database of numbers that at one point were inputted, and automatically dials them, that equipment does not qualify as a "generator". Rather:

> "random or sequential number generator" refers to <u>the genesis of the list of numbers</u>, not to an interpretation that renders "number generator" synonymous with "order to be called."

---

[4] While this section also prohibits calls to cell phone numbers in the absence of consent using an "artificial or prerecorded voice," that prong of the statute is not at issue in this case, as Ascent Mortgage does not use any artificial or prerecorded voice.

*Marks v. Crunch San Diego, LLC*, 55 F.Supp.3d 1288, 1292 (2014) (emphasis added), *appeal pending*. *See also Gragg v. Orange Cab Co.*, 995 F.Supp.2d 1189, 1193 (W.D. Wash. 2014) ("'random number generation' means random sequences of 10 digits and 'sequential number generation' means (for example) (111) 111-1111, (111) 111-1112, and so on," *quoting Griffith v. Consumer Portfolio Service, Inc.*, 838 F.Supp.2d 723, 725 (N.D. Ill. 2011)). *Accord, Dominguez v. Yahoo!, Inc.*, 8 F.Supp 3d 637, 643 (E.D. Pa. 2014), *vacated and remanded*, 2015 WL 6405811 (3d Cir. Oct. 23, 2015).[5]

In its 2015 Order, the FCC rejected this interpretation. Although the FCC 2015 Order has several inconsistencies and ambiguities, on its face, the FCC apparently took the view that any autodialer or predictive dialer is an ATDS. This interpretation essentially ignores the statutory requirement that the equipment include "a random or sequential number generator."

To avoid that problem, the FCC appears to rule that, so long as the equipment could theoretically be modified to include a "random or sequential number generator," that is sufficient to make the equipment an ATDS. The statutory language states that the equipment must have the "capacity" to store or produce telephone numbers "using a random or sequential number generator." The FCC concluded that "the capacity of an [ATDS] is not limited" to what the equipment is capable of doing in its "current configuration[,] but also includes its <u>potential functionalities</u>," FCC 2015 Ruling, ¶ 16 (emphasis added) - that is, what it *could* do if modified, at least if those possible modifications are not too "theoretical" or "attenuated," *id.* ¶ 18. The FCC 2015 Order also is filled with inconsistencies and ambiguities that make it impossible to decifer as to the precise definition of an ATDS according to the FCC. At one point, the FCC suggested that an ATDS must be able to "store or produce, and dial random or sequential numbers," but elsewhere it "reaffirm[ed]" its earlier orders and offered several different tests for the functions an ATDS must have the capacity to perform. *Id.* ¶ 10; *see also id.* ¶¶ 12-14.

---

[5] Some sources have confused the statutory definition of ATDS with the term "predictive dialer." Some courts have interpreted certain orders from the FCC to include predictive dialers as meeting the statutory definition of an ATDS. Other Courts have interpreted the FCC's 2012 Order as not including a "predictive dialer" as an ATDS. *See, e.g.*, *Marks v. Crunch San Diego*, 55 F.Supp. 3d at 1291. *See, e.g.,* 47 C.F.R. § 64.1200(f)(2).

The FCC concluded that "capacity" includes "potential functionalities" that could be created by modifying the equipment, except where those potential functionalities are too "attenuated" or "theoretical." The FCC does not explain what that means other than to say that rotary phones are not ATDS. It is unclear what modifications are *too* theoretical or attenuated to turn a modern-day phone into an ATDS. Similarly, the FCC put forth self-contradictory descriptions of the functions that an ATDS must be able to perform - including suggesting that the ability to dial from any list of numbers (whether random or sequential or not) is, by itself, sufficient.

This issue is also pending before the D.C. Circuit in *ACA International v. FCC.*

**B. Plaintiffs Lack Standing For, At Most, a Procedural Violation.**

Standing under Article III of the Constitution is required for federal-court jurisdiction and therefore a threshold question in every federal case. *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009). The party invoking federal jurisdiction bears the burden of establishing each element. *Spokeo v. Robins,* 136 S.Ct. at 1547.

The party invoking federal jurisdiction bears the burden of establishing each element. *Id*. In order to establish Article III jurisdiction, a litigant must state an "actual case or controversy." *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1146 (2013) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). This case or controversy requirement of Article III means that litigants must establish their standing to sue. *Id.* (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)*; Summers v. Earth Island Institute*, 555 U.S. 488, 492-93 (2009); *DaimlerChrysler*, 547 U.S. at 342, *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).

The injury in fact element is "an indispensable part of the plaintiff's case." *Lujan*, 504 U.S. at 561. As the Supreme Court has held:

> Where, as here, a case is at the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element.

*Spokeo* at 1547, *quoting Warth v. Seldin*, 422 U.S. 490, 518 (1975). A 12(b)(1) motion to dismiss is granted where plaintiff fails to satisfy this standard because the Court lacks subject matter jurisdiction over the Plaintiff's claims. Fed. R. Civ. P. 12(b)(1).

Article III standing demands that the plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S.Ct. at 1547.  To establish the "[f]irst and foremost" of these elements—injury in fact—the plaintiff must show he has suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id. at* 1548 (citation omitted).  "Concreteness" requires an injury to be "'*de facto*'; that is, it must actually exist." *Id. at* 1548.  This concreteness requirement endures even in the context of a statutory violation, and so a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* (citation omitted); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation ... is insufficient to create Article III standing.").

The *Spokeo* case is similar to the present one in that it involved a regulatory statute that provided a private right of action and statutory penalties.  As with the TCPA (§ 227(b)(3)(B)), the statute involved in *Spokeo* authorized suit for actual damages or statutory penalties.  Like here, the plaintiff in the *Spokeo* case alleged only statutory penalties.  The Supreme Court in *Spokeo* reversed the Ninth Circuit's holding that the plaintiff's alleged statutory penalties were sufficient to establish a concrete and particular injury in fact.  The Court made it clear that "[i]njury in fact is a constitutional requirement[.]" *Spokeo* at 1547.  In so deciding, the Court drew a distinction between particularization and concreteness, namely, that despite the fact that Robins had alleged the "particularized" aspect of the injury-in-fact requirement -- a statutory violation -- such a violation, absent concrete harm to the plaintiff, was insufficient to establish Article III standing. *Id.* at 1548.

The Court held that the plaintiff could not show Article III standing "by alleging a bare procedural violation.  A violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 1549-1550.  The mere presence of a statutory violation, without any concrete impact on the Plaintiff as required by Article III, will not suffice to establish standing:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. **Article III standing requires a concrete injury even in the context of a statutory violation.**

*Spokeo* at 1549 (emphasis added). The *Spokeo* decision confirms that Article III standing is dependent upon a "concrete" injury even within the context of a statutory violation, and "a bare procedural violation" of a federal statute, "divorced from any concrete harm," is insufficient to satisfy standing. *Id.*

At most, Plaintiffs allege a bare procedural violation. The Plaintiffs obviously provided "prior express consent" but their theory must be that, despite the actual consent they provided, the proper procedures were not used to obtain the consent under the FCC's regulation. The Plaintiffs' case essentially boils down to alleging that Plaintiffs' consent failed to use the magic words imposed by the FCC.[6] Ascent Mortgage's website protocol prevents a person from proceeding unless the person consents as follows:

> By clicking "View Homes" I consent by electronic signature to be contacted about this request and related services at the telephone number provided above (dialed manually, by autodialer, and/or by text messages & e-mail). This consent is required as a condition to continue.

*See* Robinson Decl., ¶ 6 and Exh. 1 thereto.

Plaintiffs fail to allege particularized, concrete injury as required to establish Article III standing under *Spokeo*. The Plaintiffs do not allege in their Complaint that they sustained any actual damages. Plaintiffs do not even attempt to allege any injury, much less a "concrete" injury. "A 'concrete' injury must be 'de facto' [in order to satisfy Article III standing]; that is, it must actually exist. When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term - 'real,' and not 'abstract.'" *Spokeo*, 136 S. Ct. at 1548. *See also Clapper*, 133 S.Ct. 1138, 1151 (2013) (no Article III standing where plaintiff alleged increased risk of harm to plaintiff that was not "certainly impending" because injury was too speculative).

---

[6] As such, this case is different from *Mbazomo v. Etourandtravel, Inc.*, 2016 WL 7165693 (E.D. Cal., December 8, 2016), which involved cold calls.

The Supreme Court remanded the *Spokeo v. Robins* case back to the Ninth Circuit. The Ninth Circuit is currently considering the ramifications of the Supreme Court's ruling in the context of an alleged procedural violation involving a claim solely for statutory penalties, as in this case. Some district judges have stayed cases pending the Ninth Circuit's reconsideration of *Robins v. Spokeo*. *See, e.g.*, Exh. 10 to Sikkema Decl.

A stay may be appropriate in this case as well pending the Ninth Circuit's ruling on this issue. *See* discussion *infra*.

**C. A Stay is Appropriate in this Case Pending *ACA International v. FCC***

The issues of express consent and the definition of "automatic telephone dialing system" under the TCPA, which may be dispositive in this case, are currently pending before the appellate courts. The validity of the FCC 2015 Order is pending before the D.C. Circuit in *ACA International v. FCC*. The Ninth Circuit itself has deferred ruling in *Marks v. Crunch San Diego* pending the D.C. Circuit's ruling. In these circumstances, a stay is the prudent and economical course of action for the present case. Ascent Mortgage submits that judicial economy and efficiency for all parties and the Court system would be served by a stay of further proceedings in this case, at least pending the D.C. Circuit's ruling in *ACA International v. FCC.*

The District Court has broad discretion to grant a stay. *See, e.g., Clinton v. Jones*, 520 U.S. 681, 706 (1997). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay on an action before it, pending resolution of independent proceedings which bear upon the case." *Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). A district court weighs the following three factors when deciding a motion to stay:

> (1) the possible damage which may result from granting the stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of simplifying or complicating issues, proof, and questions of law which could be expected to result from a stay.

*Munoz v. PHH Corp.*, No. 08-0759, 2011 WL 4048708, at *2 (E.D. Cal. Sept. 9, 2011) (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). Mere "delay after several years of discovery and after the conclusion of briefing on the motion for class certification … is not damage resulting from a stay." *Id.* To the contrary, "a stay will reduce the additional expenditure of the

parties' time and resources, which is of particular importance if the Supreme Court's decision ultimately disposes of this action." *Id.* at *4. The pendency of the decision in the D.C. Circuit in *ACA International v. FCC*, as well as the Ninth Circuit in *Marks v. Crunch San Diego*, satisfies the *Munoz* factors.

With respect to the petitions for review of the FCC 2015 Ruling pending before the D.C. Circuit, oral argument on these petitions has already been held on October 19, 2016. *See* Sikkema Decl., ¶¶ 4-6 and Exh. 2 thereto. Several issues have been raised by the petitions, including the issues of the meaning of the phrases "automatic telephone dialing system" and "prior express consent" in the statute. *See, e.g.*, Exhs. 3, 4 and 5 to Sikkema Declaration.

The appeal of the *Marks v. Crunch San Diego* case to the Ninth Circuit raises at least the issue of the definition of an ATDS. The oral argument in the *Marks v. Crunch San Diego* case was held on December 6, 2016. Sikkema Decl., ¶¶ 13-16 and Exhs. 6 and 7. On December 14, 2016, the Ninth Circuit itself deferred ruling in the *Marks* case until the D.C. Circuit decides the petitions challenging the FCC 2015 Ruling.

The doctrine of "primary jurisdiction" also counsels for a stay in this case. Judicial deferral under the primary jurisdiction doctrine is committed to the sound discretion of the court when "protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002). The doctrine is a "prudential" one where the court determines that a claim implicates technical and policy questions that should be first addressed by the relevant agency with regulatory authority over the relevant industry rather than by the courts. *Gusman v. Comcast Corp.*, No. 13CV1049-GPC (DHB), 2014 WL 2115472, at *2 (S.D. Cal. May 21, 2014). Courts consider the following four factors when determining whether to grant a stay under the doctrine:

> (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration.

*Syntek*, 307 F.3d at 781. "[S]tay pending the outcome of an administrative proceeding that might render the relief sought in district court unnecessary is a proper exercise of the court's discretion."

*McElroy v. Tracy Unified Sch. Dist.*, No. 2:07-CV-00086-MCE-EFB, 2007 WL 1674000, at *1 (E.D. Cal. June 8, 2007).

Here, the administration process is ongoing as the FCC 2015 Ruling is on appeal before the D.C. Circuit, which is part of the administrative process. That process has not yet run its course. As such, consideration of the *Syntek* factors favor a stay pending the D.C. Circuit's decision.

A stay would allow this Court and the parties to avoid needlessly expending substantial time and resources litigating this putative class action despite a potential dispositive defense, and delay would cause no prejudice to Plaintiff. The pending appellate cases have already held the oral arguments. Forcing Defendant to undergo the expense and time of discovery and the entire class certification process pending the resolution of the petitions challenging the FCC 2015 Ruling and the Ninth Circuit appeal would prejudice Defendant. Conversely, as discussed above, there is ***no*** damage or hardship resulting from a complete stay of this action pending these decisions.

In fact, granting a stay for a matter of weeks or months, and awaiting guidance as to whether the FCC 2015 Ruling is valid, would increase judicial efficiency, conserve resources, avoid superfluous efforts and inconsistent rulings, and promote the orderly progression of the case. *Cf. Boise*, 2015 WL 4077433, at *6 (granting stay, despite Eleventh Circuit precedent rejecting mootness by unaccepted offer of judgment, because months-long "delay," "onerous discovery," and "threshold issues of jurisdiction" "weigh heavily in favor of a stay"). It would be a waste of the parties' resources to engage in significant class discovery and the class certification process on issues later eliminated by the pending decisions. Several other courts have issued similar stays pending the decision in *ACA International v. FCC*. *See* Sikkema Decl., ¶ 19 and Exh. 9 thereto.

///
///
///
///
///
///
///

## IV. CONCLUSION

For the foregoing reasons, Defendant Ascent Mortgage respectfully requests the Court to dismiss this case for lack of Article III standing, or in the alternative, to stay the case pending the outcome of one or more of the pending matters:

(1) *ACA International v. FCC*;

(2) *Marks v. Crunch San Diego LLC*; and

(3) the Ninth Circuit reexamination of *Robins v. Spokeo*.

Dated: March 22, 2017

CAROTHERS DISANTE & FREUDENBERGER LLP

By: /s/ Jeffrey L. Sikkema
Jeffrey Sikkema
Attorneys for Defendant
ASCENT MORTGAGE RESOURCE GROUP LLC d/b/a AMERICAN RENT TO OWN