UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

AT SACRAMENTO

| | |
|---|---|
| MICHELLE COULTER and RICHARD DANIELS, on Behalf of Themselves and all Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ASCENT MORTGAGE RESOURCE GROUP LLC, d/b/a AMERICAN RENT TO OWN,<br><br>Defendant. | No. 2:16-cv-02237-SB<br><br>**ORDER DENYING MOTION TO DISMISS; GRANTING STAY** |

Before the Court are Defendant's Motion to Dismiss, or in the Alternative, to Stay, ECF No. 16, and Plaintiff's Motion to Compel, ECF No. 18. A telephonic hearing was held on the motions on May 16, 2017. Plaintiffs were represented by Yeremey O. Krivochey.[1] Defendant was represented by Jeffrey Sikkema.

This is a proposed class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Plaintiffs allege that Defendant "negligently,

---

[1] Attorney Yitzchak Kopel also participated in a limited capacity on behalf of Plaintiffs.

**ORDER DENYING MOTION TO DISMISS; GRANTING STAY ~ 1**

knowingly, and willfully, contacted Plaintiffs and class members on their telephone using an artificial or prerecorded voice without their prior written consent." ECF No. 1. Plaintiffs are seeking statutory damages, injunctive relief, and attorney's fees.

Defendant moves to dismiss the action under Fed. R. Civ. P. 12(b)(1) because Plaintiffs lack standing to bring this action under Article III of the U.S. Constitution and the recent decision of *Spokeo, Inc. v. Robins*, 578 U.S. __, 136 S. Ct. 1540 (2016). In the alternative, Defendant asks the Court to stay the matter because there are three pending appellate cases[2] that deal with the definition of "automatic telephone dialing system" and the interpretation of the phrase "prior express consent" under 47 U.S.C. § 227(b)(1)(A), which are relevant to Plaintiffs' claims.

## Plaintiffs' Complaint

Plaintiff Michelle Coulter is a resident of Sacramento, California and Plaintiff Richard Daniels is a resident of Desert Hot Springs, California. ¶ 6, 7. Defendant Assent Mortgage Resource Group, LLC, d/b/a/ American Rent to Own, is a Colorado corporation with its principal place of business located in Denver, Colorado. ¶ 8. Defendant advertises itself as a rental home search service and a means for consumers with poor credit to purchase a home. *Id.*

Plaintiffs allege that Defendant called Mr. Daniels at least eleven times on his cell phone using an autodialer and/or an artificial or prerecorded voice, even

---

[2] The three cases are: (1) numerous petitions challenging the FCC's 2015 Omnibus Ruling are pending before the D.C. Circuit, *ACA International v. FCC*, Case No. 15-1211; (2) the case of *Marks v. Crunch San Diego, LLC*, Case No. 14-56834 (involving the definition of "automated telephonic dialing system") and (3) the Ninth Circuit is reexamining its ruling in *Robins v. Spokeo*, Case No. 11-56843, in light of the U.S. Supreme Court's remand.

**ORDER DENYING MOTION TO DISMISS; GRANTING STAY ~ 2**

though Mr. Daniels did not give Defendant prior express written consent to make these calls. ¶ 16. Mr. Daniels requested that Defendant stop calling on several occasions, but the calls continued despite his requests. *Id.*

Plaintiffs also allege that Defendant called Ms. Coulter at least five times on her cell phone using an autodialer and/or an artificial or prerecorded voice. ¶ 21. Ms. Coulter requested that Defendant stop calling her and continued to ask it to stop, each and every time it called, but the calls continued despite her request. *Id.*

For its part, Defendant asserts that its calls are not the typical cold calls like those of other TCPA cases. Rather, individuals who access its website provide their contact information for Ascent Mortgage to follow up with them. By providing the contact information, individuals explicitly consent to be contacted by phone by use of an autodialer or predictive dialer. In its motion, Defendant explained that before individuals can view any homes on its website, they are given the following information:

> By clicking "View Homes" I consent by electronic signature to be contacted about this request and related services at the telephone number provided above (dialed manually, by autodialer, and/or by text message & e-mail). This consent is required as a condition to continue.

ECF No. 16-2.

Defendants asserts that both named Plaintiffs provided such consent prior to receiving any calls. After a person completes the website protocol and provides their telephone number, the phone numbers are collected and stored in the database in lists. Equipment is used to call the number on the applicable list. When a call is picked up at the other end, the call is sent to an Ascent Mortgage representative. Defendant admits that in some sense, it "uses a telephone system that might be described as an 'autodialer,'" but points out the phone numbers themselves are not generated by the equipment. ECF No. 16-1 at 4. It maintains procedures are in place if the person wants to be placed on a do-not-call list, but neither of the two Plaintiffs ever revoked their consent or authorization to be

**ORDER DENYING MOTION TO DISMISS; GRANTING STAY ~ 3**

called, or asked to be placed on the do-not-call list.

## Telephone Consumer Protection Act

The three elements of a TCPA claim are: "(1) the defendant called a cellular telephone; (2) using an automatic telephone dialing system ("ATDS"); (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). An ATDS means:

> "equipment which has the capacity—
> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
> (B) to dial such numbers."

47 U.S.C. § 227(a)(1).

## Standing

In order for the Court to have subject matter jurisdiction to hear this case, Plaintiffs must establish they have Article III standing. *Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012). To satisfy the Article III standing requirement, Plaintiffs must allege (1) they suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of Defendant; and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo*, 136 S. Ct. at 1547.

Defendant argues Plaintiffs do not have standing because they have not adequately alleged an injury in fact. The Ninth Circuit recently addressed the standing question with regard to the TCPA. *See Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1042-43 (9th Cir. 2017). There, the Circuit applied the U.S. Supreme Court's reasoning in *Spokeo* to conclude that an allegation of a violation of the TCPA is sufficient to meet the standing requirement:

> As the Supreme Court explained in *Spokeo*, "both history and the judgment of Congress play important roles" in supporting our conclusion that a violation of the TCPA is a concrete, *de facto* injury. *Spokeo*, 126 S. Ct. at 1549. Actions to remedy defendants' invasions of privacy, intrusion upon seclusion, and nuisance have long been

**ORDER DENYING MOTION TO DISMISS; GRANTING STAY ~ 4**

heard by American courts, and the right of privacy is recognized by most states. *See* Restatement (Second) of Torts § 652(B) (Am. Law Inst. 1977). And in enacting the TCPA, Congress made specific findings that "unrestricted telemarketing can be an intrusive invasion of privacy" and are a "nuisance." Telephone Consumer Protection Act of 1991, Pub. L. 102–243, § 2, ¶¶ 5, 10, 12, 13, 105 Stat. 2394 (1991); *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 132 S.Ct. 740, 745 (2012). Congress sought to protect consumers from the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements. *See* Pub. L. 102–243, § 2, ¶ 12. The session law for the TCPA itself stated: "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* We also have recognized this congressional purpose. *Satterfield v. Simon & Schuster*, 569 F.3d 946, 954 (9th Cir. 2009).

The TCPA establishes the substantive right to be free from certain types of phone calls and texts absent consumer consent. Congress identified unsolicited contact as a concrete harm, and gave consumers a means to redress this harm. We recognize that Congress has some permissible role in elevating concrete, de facto injuries previously inadequate in law "to the status of legally cognizable injuries." *Spokeo*, 136 S.Ct. at 1549 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992). We defer in part to Congress's judgment, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Id.* We also recognize that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.*

Congress aimed to curb telemarketing calls to which consumers did not consent by prohibiting such conduct and creating a statutory scheme giving damages if that prohibition was violated. Unlike in *Spokeo*, where a violation of a procedural requirement minimizing reporting inaccuracy may not cause actual harm or present any material risk of harm, *see id.* at 1550, the telemarketing text messages

**ORDER DENYING MOTION TO DISMISS; GRANTING STAY ~ 5**

> at issue here, absent consent, present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA. Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA "need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549 (emphasis in original). *Cf. Campbell–Ewald Co. v. Gomez*, ––– U.S. ––––, 136 S.Ct. 663, 672 (2016) (affirming that "the District Court retained jurisdiction to adjudicate Gomez's [TCPA] complaint.").

*Van Patten*, 847 F.3d at 1042-43.

Based on this precedent, it is clear Plaintiffs have shown concrete, particularized, legally protected and actual harms and as such, they have standing to bring their claims under the TCPA. Defendant's Motion to Dismiss for lack of standing is denied.

**Defendant's Motion to Stay**

Defendant argues key issues regarding the interpretation of the TCPA are pending before the D.C. Circuit in petitions challenging the FCC's regulations.[3] It also points out that the Ninth Circuit has deferred ruling in *Marks v. Crunch San Diego,* pending the D.C.'s Circuit's ruling.[4] Defendant believes the issues of

---

[3] Numerous petitions challenging the FCC's 2015 Ruling are pending before the D.C. Circuit. *See ACA International v. FCC*, Case No. 15-1211.

[4] In *Marks*, the district court held the FCC does not have the statutory authority to change the TCPA's definition of an ATDS. *Marks v. Crunch San Diego*, 55 F. Supp. 3d 1288, 1292 (S.D. Cal. 2014). It concluded that the use of the term "random or sequential number generator" cannot reasonably refer broadly to any list of numbers dialed in random or sequential order, as that would effectively nullify the entire clause. *Id.* at 1292. "If the statute meant to only require that an ATDS include any list or database of numbers, it would simply define an ATDS as a system with "the capacity to store or produce numbers to be called." *Id.* It noted

**ORDER DENYING MOTION TO DISMISS; GRANTING STAY ~ 6**

consent and the definition of an ATDS are likely to be dispositive in the present case. It argues judicial economy and efficiency would be served by staying this case until the D.C. Circuit rules on the petitions.

### 1. Motion Standard

"A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceeding which bear upon the case." *Leyva v. Certified Grocers of Calif., Ltd.*, 593 F.2d 857, 862 (9th Cir. 1979). "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.* "In such cases, the court may order a stay of the action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it." *Id.* "A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time." *Id.* at 864.

In determining whether to grant the stay, the court must weigh the competing interest. *Landis. v. N. Am. Co.*, 299 U.S. 248, 255 (1936). These competing interests include the possible damage that may result from granting the stay, the hardship or inequity that a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law that could be expected to result from a stay. *CMAX , Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

---

that the platform used by the defendant did not have the present capacity to store or produce numbers to be called, using a random or sequential number generator, and to dial those numbers. *Id.* It concluded the platform did not meet the definition because the numbers only entered the system through methods that required human curation and intervention. *Id.*

**ORDER DENYING MOTION TO DISMISS; GRANTING STAY ~ 7**

Lengthy or indefinite stays are not permitted. *Blue Cross & Blue Shield of Al. v. Unity Outpatient Surgery Cntr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007). Such stays effectively force the plaintiff out of court and run the danger of denying justice. *Id.* The party requesting the stay bears the burden of showing that the circumstances justify the court exercising its discretion to enter a stay. *Landis*, 299 U.S. at 255.

### 2. Analysis

Here, Defendant has met its burden of showing that a stay would be appropriate in this case. A stay is appropriate for the following reasons: (1) the definition of an ATDS is a threshold issue for liability and will determine the scope of discovery; (2) a stay will conserve judicial resources, clarify the law, and aid the court in making a decision on the merits; (3) Plaintiffs would not be prejudiced by the stay; (4) a stay would reduce the burden of litigation on the parties; (5) the *ACA International* appeal is not likely to remain pending for long, considering that oral argument was heard in October, 2016; and (6) absent a stay, Defendant would suffer hardship in conducting discovery and preparing for trial.

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. Defendant's Motion to Dismiss, or in the Alternative, to Stay, ECF No. 16, is **GRANTED**, in part and **DENIED**, in part. The above-captioned case is **STAYED** until the D.C. Circuit issues its ruling in *ACA International v. FCC*.

2. Plaintiffs' Motion to Compel, ECF No. 18, is **DENIED**, with leave to renew, after the D.C. Circuit issues its ruling in *ACA International v. FCC*.

3. The parties shall notify the Court when the D.C. Circuit's opinion is issued and file supplemental briefing regarding the impact of the opinion on this case within fifteen days of that notice.

///
///
///

**ORDER DENYING MOTION TO DISMISS; GRANTING STAY ~ 8**

**IT IS SO ORDERED.** The Clerk of Court is directed to enter this Order and forward copies to counsel.

**DATED** this 18th day of May, 2017.

*Stanley A. Bastian*
Stanley A. Bastian
United States District Judge

**ORDER DENYING MOTION TO DISMISS; GRANTING STAY ~ 9**